## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| TANYA ADLEY, | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| vs. | ) | Case No. CV-12-S-4036-S |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant, Tanya Adley, commenced this action on December 5, 2012, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th

Cir. 1983).

This case has a unique procedural history. Claimant first submitted an application for benefits on August 15, 2006, alleging disability beginning November 8, 2011.[1] Her claim initially was denied, and she requested review by an Administrative Law Judge ("ALJ"), who conducted a hearing and issued a decision on May 14, 2009, upholding the denial of benefits because there were no medical signs or laboratory findings to support the existence of a medically determinable impairment.[2]

Claimant requested review of the ALJ's decision by the Appeals Council, and the Appeals Council remanded the case to the ALJ on March 17, 2010.[3] The Appeals Council disagreed with the ALJ's finding that claimant did not have a medically determinable impairment because

> the medical evidence of record shows that the claimant has impairments that are at least "severe" within the meaning of the Social Security Act. Consultative examiner, B. Romeo, M.D., indicated that the claimant's impairment is such as to limit her to a range of medium work further limited by environmental limitations (Exhibit 10F). Moreover, examining physician, G. DeWees, M.D., in a December 2, 2008, report indicated that the claimant's impairments left her unable to work an 8-hour day (Exhibit 11F). This opinion was not addressed and needs to be considered.[4]

---

[1] Tr. 196-201.

[2] Tr. 89-91.

[3] Tr. 95-97.

[4] Tr. 95.

The Appeals Council also criticized the ALJ for failing to consider the following factors in evaluating the intensity, persistence and limiting effects of claimant's alleged symptoms: *i.e.,* "objective medical evidence; medical opinions; prior work record; daily activities; the location, duration, frequency and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment other than medication; and other measures used to relieve symptoms."[5]  The Appeals Council directed the ALJ, upon remand, to:

- Give further consideration to the evidence of record and proceed beyond step 2 of the sequential evaluation process.  In so doing, the Administrative Law Judge will give further consideration to the nontreating source opinions pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Ruling 96-5p, and explain the weight given to such opinion evidence.  As appropriate, the Administrative Law Judge may request the nontreating source to provide additional evidence about and/or further clarification of the opinion and medical source statements about what the claimant can still do despite the impairment(s) (20 CFR 404.1512 and 416.912).

- Obtain updated evidence concerning the claimant's physical impairment(s) in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913).  The additional evidence may include, if warranted and available, a consultative physical examination and medical source statements about what the claimant can still do despite the impairment(s).

- Evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining

[5] *Id.*

3

to evaluation of symptoms (20 CFR 404.1529 and 416.929) and Social Security Ruling 96-7p.

•        If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base.  The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.  The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966).  Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).[6]

Following remand, the same ALJ conducted a second hearing, during which claimant amended her alleged onset date to May 15, 2006.[7]  The ALJ issued a second decision, again denying claimant's claim for benefits, on December 18, 2010.[8]  The ALJ found that claimant had the severe impairment of status post acromioplasty of the scapula bone,[9] but that she nonetheless retained the residual functional capacity

to lift-carry 25 pounds frequently and 50 pounds occasionally; she can stand for six hours in an eight-hour day; and sit for six hours in an eight-hour day.  She can frequently balance, bend, stoop, crouch, kneel, and climb stairs; but can never crawl, or climb ladders, ropes, or scaffolds. She can occasionally reach overhead with her right upper extremity.  She

---

[6] Tr. 96.

[7] Tr. 21.

[8] Tr. 44-48.

[9] Tr. 45.

has no visual, communicative, or environmental limitations.[10]

The vocational expert testified that a person of claimant's age, education, work experience, and residual functional capacity would be able to perform claimant's past relevant work as a cashier.  Accordingly, the court found that claimant was not under a disability, as defined by the Social Security Act.[11]

Claimant once again requested that the Appeals Council review the ALJ's decision, but this time the Appeals Council upheld the decision on appeal.[12]  Thus, the ALJ's decision became the final decision of the Commissioner and, therefore, ripe for appeal to federal district court.

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards.  Specifically, claimant asserts that the ALJ:  (1) improperly relied upon the opinion of the medical expert who testified during the second administrative hearing, instead of obtaining an additional consultative examination; (2) failed to comply with the Appeals Council's instructions on remand; and (3) improperly rejected the opinion of claimant's treating physician.  Upon review of the record, the court concludes that these contentions are without merit.

A.    **Medical Expert**

---

[10] Tr. 46.

[11] Tr. 47.

[12] Tr. 1-3.

Claimant first criticizes the ALJ's decision to rely upon the testimony of Dr. Arthur Brovender, a medical expert who testified during the administrative hearing, instead of obtaining an additional consultative examination or requesting clarification from the consultative sources who already provided opinions.

As the Eleventh Circuit has observed, an ALJ

> has an obligation to develop a full and fair record, even if the claimant is represented by counsel. *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). The ALJ is not required to seek additional independent expert medical testimony before making a disability determination *if the record is sufficient and additional expert testimony is not necessary for an informed decision.* *Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999) (holding the record, which included the opinion of several physicians, was sufficient for the ALJ to arrive at a decision); *Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988) (holding the ALJ must order a consultative exam when it is necessary for an informed decision).

*Nation v. Barnhart,* 153 Fed. Appx. 597, 598 (11th Cir. 2005) (emphasis supplied).

Furthermore, claimant bears the ultimate burden of producing evidence to support her disability claim. *See Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. §§ 416.912(a), (c)). The court concludes that the record in this case, including the existing information from claimant's treating physicians and the consultative examiners, was sufficient to give substantial support to the ALJ's decision, and the ALJ was not required to order an additional consultative evaluation.

Claimant also suggests that Dr. Brovender's opinion was not sufficient because Dr. Brovender did not properly understand Social Security terminology, and

specifically, the Social Security meaning of the term "severe."  Upon review of the hearing transcript, the court concludes that claimant's argument mischaracterizes Dr. Brovender's testimony.  During the hearing, the ALJ asked Dr. Brovender to describe claimant's impairments as supported by the medical evidence, and Dr. Brovender discussed a partial tear of the rotator cuff in the right shoulder with tendonosis, a small herniated disc at C5-C6 with no impingement of the nerves, a past debridement procedure of the scapula bone, low back pain, and mild bulges and arthritis of the facets of the lumbosacral spine.[13]  The following exchange then took place:

> Q    Doctor, if we were to identify, and we're going to probably repeat some of what you said, what would you say is severe and what would you say is not severe?  If you could make that dichotomy?
>
> A    Well, there's nothing severe.
>
> Q    Are you saying nothing here has more than a minimal effect on her functionality?
>
> A    When you say severe —
>
> Q    Anything that would have more than a mild —
>
> A    Okay, she has, she's status post arthroscopy of her right shoulder.
>
> Q    And would that cause any functional limitations?
>
> A    I would say, yes.
>
> . . . .

---

[13] Tr. 23-26.

> Q      Okay.  And the — okay, well, I won't get into the degree of limitation, but it obviously has to do with the shoulder and lifting her arm.[14]

Based on this testimony, Dr. Brovender appears to have understood the term "severe" to describe an impairment that has more than a minimal effect on claimant's functionality.  That is consistent with the definition of a "severe" impairment set forth in the Social Security regulations.  *See* 20 C.F.R. § 404.1520(c) (defining a "severe" impairment as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities") (alteration supplied).

Furthermore, the ALJ's decision to rely upon Dr. Brovender's testimony was not in contravention of the Appeals Council's directives.  The Appeals Council directed the ALJ to obtain updated evidence that "*may* include, if warranted and available, a consultative physical examination and medical source statements about what the claimant can still do despite the impairment(s)."[15]  Claimant has failed to explain — and the court can discern no reason — why the use of a medical expert during the administrative hearing would not satisfy the Appeals Council's directive.

In summary, claimant has offered no persuasive argument why the hearing testimony from Dr. Brovender should be discredited, and the court finds that the ALJ's decision to rely upon Dr. Brovender's opinion was in accordance with

---

[14] Tr. 27-28.

[15] Tr. 96 (emphasis supplied).

applicable law and supported by substantial evidence.

## B.    Appeals Council's Directives

Clamant also summarily asserts that the ALJ failed to comply with the Appeals Council's directive to "address the location, duration, intensity and frequency of pain, and the type, dosage and effects of medications as well as the environmental limitations assessed by consultative physician Dr. Romeo and the fact that Plaintiff was limited to less than an eight hour day by consultative physician Dr. DeWees."[16]

Contrary to claimant's assertion, the ALJ *did* address the opinions of both Dr. Romeo and Dr. DeWees.  He assigned only minimal weight to Dr. DeWees's opinion because it was based on subjective complaints rather than objective medical evidence, and because it "clash[ed] with the other opinions in the record from treating, examining, and non-examining physicians."[17]   That conclusion is supported by substantial evidence.

The ALJ also discussed Dr. Romeo's opinion more than once in the administrative decision.  In determining that claimant's back pain was not a severe impairment, the ALJ noted that Dr. Romeo found a full range of motion in claimant's dorsolumbar spine, no back spasm or deformity, normal gait, and full ability to stoop, kneel, crouch, tandem walk, and heel/toe walk.[18]   He also considered it important that

---

[16] Doc. no. 9 (claimant's brief), at 11.

[17] Tr. 47 (alteration supplied).

[18] Tr. 45.

Dr. Romeo found no "objectively identified etiology" for claimant's complaints of back pain.[19]  Additionally, in determining claimant's residual functional capacity, the ALJ noted that Dr. Romeo found full range of motion in all of claimant's extremities, and he considered claimant capable of performing work-related activities "ostensibly consistent with a modified medium exertional level."[20]  Overall, the ALJ afforded "some weight" to Dr. Romeo's assessment, but he ultimately concluded that claimant had even greater limitations than those assessed by Dr. Romeo due to her shoulder impairment.[21]  Although the ALJ did not explicitly mention the environmental limitations imposed by Dr. Romeo, his failure to do so was, at most, harmless error. Dr. Romeo indicated that claimant should never work in high exposed places, drive automotive equipment, or operate heavy machinery in the workplace.[22]  There is no indication that claimant would need to perform those tasks in order to do work within her residual functional capacity, including her past relevant work as a cashier.

Finally, the court concludes that the ALJ addressed claimant's subjective symptoms in accordance with the Appeals Council's directives.  The Appeals Council directed the ALJ to "[e]valuate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of

---

[19] *Id.*

[20] Tr. 46.

[21] Tr. 47.

[22] Tr. 648.

symptoms (20 CFR 404.1529 and 416.929) and Social Security Ruling 96-7p."[23]   The

ALJ did just that.  He stated that he "carefully reviewed the claimant's subjective

complaints" under the regulatory provisions and Social Security Ruling.  He found

> that the evidence does not satisfy Social Security Regulations 20 C.F.R.
> §§ 404.1529(c) and/or 416.929(c), SSR 96-7p, on the assessment of
> subjective complaints of pain and other symptoms.  It does not establish
> an underlying medical condition, which is of such severity that it can
> reasonably be expected to give rise to the symptoms alleged by the
> claimant.
>
> While the record reveals the claimant's initial injury and
> corrective surgical procedure, it further clearly reveals the claimant is
> able to function within the scope of her residual functional capacity and
> that the claimant has overstated the severity of her symptoms.[24]

The ALJ based that decision upon an evaluation of the medical evidence from both

treating and consultative sources, including evidence about claimant's medications.[25]

The ALJ's conclusions were in accordance with applicable law, supported by

substantial evidence, and in compliance with the Appeals Council's directives.

## C.   Treating Physician

Claimant next asserts that the ALJ improperly considered the opinion of Dr.

Michael Gibson, claimant's pain management physician.  The opinion of a treating

physician "must be given substantial or considerable weight unless 'good cause' is

shown to the contrary."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.

---

[23] Tr. 96 (alteration supplied).

[24] Tr. 46.

[25] Tr. 46-47.

2004) (internal citations omitted).   Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."   *Id*. (alteration supplied). Additionally, the ALJ is not required to accept a conclusory statement from a medical source — even a treating source — that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner."  20 C.F.R. § 416.927(e).

Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors.  *See* 20 C.F.R. § 404.1527(d).  *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. Gibson completed a set of forms on October 12, 2010.  On a Clinical

12

Assessment of Pain form, he indicated that claimant experienced pain to such an extent as to be distracting to adequate performance of daily activities or work; that physical activity would greatly increase her pain to such a degree as to cause distraction from or total abandonment of tasks; that the side effects of claimant's medications could be expected to be severe and to limit her effectiveness due to distraction, inattention, drowsiness, and like symptoms; and that claimant had an underlying medical condition consistent with the pain she experienced.[26]   On a Clinical Assessment of Fatigue/Weakness form, Dr. Gibson indicated that claimant's underlying pathology had the *potential* to cause fatigue and/or weakness to such an extent as to negatively affect adequate performance of daily activities or work.   He also indicated that claimant had the *potential* to experience greatly increased fatigue or weakness as a result of physical activity, to an extent that would result in total abandonment of tasks, but that that determination could be better made after a Functional Capacities Evaluation.   Finally, Dr. Gibson indicated that claimant's medications had the *potential* to cause severe side effects that would limit her effectiveness due to distraction, inattention, and drowsiness.[27]   Dr. Gibson declined to complete the Physical Capacities Evaluation form, however, stating that an assessment of claimant's physical capabilities was "not in the scope of a pain

---

[26] Tr. 821-22.

[27] Tr. 823-24.

13

management facility."[28]

The ALJ did not specifically state how much weight he afforded to Dr. Gibson's assessment. Even so, it is clear that the ALJ did not afford the assessment controlling weight, because if he had done so, he would have been required to find claimant disabled due to distracting levels of pain. Even if the ALJ did afford only minimal weight to Dr. Gibson's assessment, that decision would have been supported by substantial evidence. Because Dr. Gibson did not conduct a Functional Capacities Evaluation, his opinion likely was based solely on claimant's subjective reports, rather than on objective medical findings. Further, as the ALJ pointed out, Dr. Gibson consistently noted in his medical records that claimant's gait and posture were normal, and that claimant was taking fewer medications than prescribed.[29] He also consistently noted that claimant's medications were well-tolerated and effective.[30] Finally, Dr. Gibson's assessment of disabling pain was inconsistent with the rest of the medical opinions and objective medical findings in the record, which generally indicated much milder symptoms and impairments.

## D.    Summary and Order

In summary, the court concludes the ALJ's decision was based upon substantial

---

[28] Tr. 820.

[29] Tr. 47. Even though the ALJ did not state how much weight he gave to Dr. Gibson's opinion, he did discuss some of Dr. Gibson's records.

[30] *See* Tr. 694-790.

evidence and in accordance with applicable legal standards.  Accordingly, the decision

of the Commissioner is AFFIRMED.  Costs are taxed against claimant.  The Clerk is

directed to close this file.

DONE this 4th day of October, 2013.

United States District Judge